RABOK MANUFACTURING COMPANY, a Corporation, Respondent, v. AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, a Corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed January 3, 1922.

1. **INSURANCE: Fire Insurance: Inflammable Materials: Customarily Used in Business of Insured: Insurer Chargeable With Knowledge.** An insurer issuing a policy of fire insurance covering the contents of certain business establishments, etc., is chargeable with knowledge of the presence of such articles as are customarily and necessarily used in the business insured; this on the theory that the description of the insured property amounts to a consent to keeping the customary articles used therein.

2. ———: ———: ———: ———: ———: **Evidence: Policy Provisions: Construction.** In an action to recover on a fire insurance policy which covered the contents of a paint manufacturing establishment, such policy containing a provision insuring all other

(600)

merchandise and materials constituting their stock in trade and "incident and necessary to the business as conducted by them," and there was substantial testimony that naptha was absolutely essential in the conduct of the insured's business, and was kept on the premises and used in the manufacture of the paint manufactured and used by the insured, it being conceded that all naptha was ,ore inflammable than kerosene, and considering also the fact nat the face of the policy showed the kind and character of v e business insured, which charged the insurer with knowledge that insured was using naptha, *held* the policy was not invalidated thereby, as said portion of the policy provisions would govern notwithstanding another clause in the policy provided that the policy should be void if insured kept on the premises naptha, etc., or petroleum, or any of its products of greater inflammability than kerosene oil.

3. **INSTRUCTIONS: Conflict: Instruction for Plaintiff Assuming Greater Burden Than Required: Favorable to Defendant: Not Complainable Error.** In an action on a fire insurance policy, an instruction given for the plaintiff that if one B was the agent of defendant and that he had been informed and knew before and at the time he issued the policy that plaintiff was using such grade of naptha or petroleum products in manufacturing paint, then such use did not avoid the policy, if in conflict with the defendant's instruction, it would not be reversible error because plaintiff, in requesting such instruction and by offering proof seeking to establish the fact that B. represented the insurance company, assumed a greater burden than it was required to assume, so if there was error on account of any conflict, it was error in favor of defendant, and for which defendant could not complain.

4. **APPELATE PRACTICE: Decision on Appeal: Element Omitted: Does Not Change Theory on Which Case Was Tried Below.** Where plaintiff sued to recover on a fire insurance policy on the contents of its paint manufacturing establishment on the theory that the insurer was chargeable with the knowledge of the agent that plaintiff kept naptha on the premises as a necessary essential in the conduct of its business, deciding the case on appeal on the theory that it must know that articles customarily and necessarily used in the business of insured is not deciding the case upon a different theory than that upon which it was tried in the court below, but upon the same theory with the element of agency omitted.

5. **INSURANCE: Vexations Refusal to Pay: Evidence: Question for the Jury.** The question of insurer's vexatious refusal to pay a

loss on a fire insurance policy, *held* under the evidence a question for the jury.

6. ———: ———: Damages: Attorneys' Fees: Evidence: Allowance of Attorneys' Fees Only: Not Error for Which Insurer Could Complain. Where there was sufficient evidence to make the question of insurer's liability for attorney fees and for vexatious refusal to pay the loss a question for the jury, and the jury did not allow plaintiff anything for vexatious delay but did allow attorney fees, the insurer cannot complain, there being evidence tending to substantiate such finding as to either.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Frank Landwehr*, Judge.

AFFIRMED.

*Leahy & Saunders*, for appellant.

(1) The keeping and use of prohibited articles, to-wit, naptha, or heavy naptha, on the premises before the fire, and both being conceded as more inflammable than kerosene, the policy was thereby rendered void. Kenefick v. Norwich Union Fire Ins. Soc., 203 Mo. 204, 103 S. W. 957; Penman v. St. Paul Fire & Marine Ins. Co., 216 U. S. 311, affirming 151 Fed. 96; Westchester Fire Ins. Co. v. Ocean View Pleasure Pier Co., 106 Va. 633; Norfolk Fire Ins. Co. v. Talley, 112 Va. 413; Steinbach v. Relief Fire Ins. Co., 13 Wall. 183; Georgia Home Ins. Co. v. Jacobs, 56 Texas, 366; Birmingham Fire Ins. Co. v. Kroger, 83 Pa. 64; Portsmouth F. Ins. Co. v. Brinkley, 2 Ins. L. J. 842; Lancaster Fire Ins Co. v. Lenheim, 89 Pa. 497; Cobb v. Ins. Co., 17 Kas. 492; Sperry v. Springfield Fire & Marine Ins. Co., 26 Fed. 234; Wheeler v. Trader Ins. Co., 62 N. H. 450; United Life F. & M. Ins. Co. Foote, 22 O. St. 340. (2) In order to show a waiver or an estoppel, it must appear that the insurer had knowledge or notice of the facts before placing the insurance, and the broker's knowledge does not charge the insuring company. 7 Cooley's Briefs on the Law of Insurance, Supp. p. 912. (3) The agent of defendant,

authorized to waive the provision relating to naptha, was such agent as was authorized to countersign the policies, collect premiums, act generally as *alter ego* of the company with reference to said contract. An insurance broker does not become such because he receives a part of the premium, nor has he the powers of a general insurance agent. James v. Mutual Life Assn., 148 Mo. 1; Manning v. Ins. Co. 176 Mo. App. 678; Springfield Steam Laundry Co. v. Traders Ins. Co., 151 Mo. 90; Thompson v. Traders Ins. Co., 169 Mo. 12; Farber v. Am. Auto Ins. Co., 191 Mo. App. 323; Pringle v. Life Ins. Co., 123 Mo. App. 710; Smith v. Am. Auto Ins. Co., 188 Mo. App. 297. (4) Though the evidence shows no knowledge of the use by respondent of any kind of naptha brought home to the broker, such knowledge as he had was not chargeable to the defendant in the absence of a showing that it was communicated to the defendant, or to its authorized agent with power to bind the company and waive fundamental provisions of the contract under doctrines of waiver and estoppel. Authorities, supra, Point 3, Rothchild v. American Ins. Co., 74 Mo. 41; Gardner v. Standard Ins. Co., 58 Mo. App. 611; Edwards v. Home Ins. Co., 100 Mo. App. 695; (5) This contract may not, any more than other contracts, be changed by recourse to verbal negotiations preliminary to execution, or by evidence of custom or usage. Ins. Co. v. Lyman, 15 Wall. 664; Grace v. American Central Ins. Co., 109 U. S. 278; Sperry v. Springfield Fire & Marine Ins. Co., 26 Fed. 234. The acceptance of a fire policy is equivalent to recognition by the insured that the provisions therein as to the property are true. Tiffany v. Queen Ins. Co., 200 S. W. 728. (6) Under the evidence, herein, the right to inflict damages for alleged vexatious refusal to pay should not have been submitted to the jury. Fay v. Aetna Ins. Co., 268 Mo. 273; Non-Royalty Shoe Co. v. Ins. Co., 210 S. W. 37; Patterson v. Ins. Co., 174 Mo. App. 37; Strawbridge v. Ins. Co., 194 Mo. App. 687; Kahn v. London Ins. Co., 187 Mo. App. 187; Berryman v. Maryland Motor Car Ins. Co.,

204 S. W. 738.   (7)   Instructions Nos. 1 and 2 given for plaintiff are in direct conflict, for which the judgment must be reversed.   Hall v. Coal & Coke Co., 260 Mo. 351; Bellows v. Travelers' Ins. Co. of Hartford (Mo. Sup.) 203 S. W. 978;  Yantz v. McVean, 202 Mo. App. 377; Kerr v. Bush, 198 Mo. App. 607;  Humphreys v. St. Louis & Hannibal R. R., 191 Mo. App. 710; State ex rel. v. Ellison, 272 Mo. 572;  Walker v. White, 192 Mo. App. 13; Metcalf v. Runnels, 222 S. W. 894; Delfosse v. United Rys. Co., 201 S. W. 860.   (8)   Instructions Nos. 1 and 2 given for plaintiff are in direct conflict with instruction No. 4 given for defendant, for which the judgment must be reversed.   Bluedorn v. Mo. Pac. Ry. Co., 108 Mo. 439; Patterson v. Evans, 254 Mo. 293;  Simpson v. C., R. I & P. Ry. Co., 192 S. W. 739;  Kelley v. United Rys. Co., 153 Mo. App. 114.   (9)   "A contract of insurance differs in no respect from other contracts as to the rules for their interpretation."   Renshaw v. Insurance Co., 103 Mo. 595;  Maupin v. Southern Ins. Co., 220 S. W. 20.   (10) Where the cause was tried in the circuit court on one theory, the court on appeal must dispose of the case on the same theory as adopted by not only the trial court, but by both the appellant and respondent as well.   In this case respondent undertook to prove that Berry was the agent of appellant and tried the case on that theory. In re Aiken, 262 Mo. 403;  Earls v. Earls, 182 S. W. 1018; Mantzke v. Goldenberg, 149 Mo. App. 12;  McMurray v. McMurray, 258 Mo. 416;  Riggs v. Railroad, 216 Mo. 310.

*Abbott, Fauntleroy, Cullen & Edwards* for respondent.

NIPPER, C.—This is an action to recover on a fire insurance policy. Plaintiff recovered judgment for $1500 and interest, with $200 for attorney's fees, and nothing for vextious delay.   The policy covered machinery, equipment, appliances, dynamos, furniture and fixtures, and all office equipment, and all improvements made to the building, and "stock in trade, consisting principally of paints, dry or in oil, paint pigments, oils,

minerals, colors, manufactured, unmanufactured and in the process of manufacture, and all materials and supplies used in and for the manufacture, storage, shipping, packing and sale thereof; on barrels, drums, cans, boxes, stationery and advertising matter, and all other merchandise and materials constituting their stock in trade *and incident or necessary to the business as conducted by them.*   (Italics ours.)

This policy also contained the following "Work and Materials Clause:"

"Permission granted for the use of the premises as stated above and for other purposes not any more hazardous, and when not in violation of any law, statute or municipal restriction, to keep and use all articles and materials usual to the business conducted therein, but the use, handling or storing of benzine, benzole, calcium carbide, dynamite ether, fireworks, gasoline, Greek fire, gunpowder exceeding twenty-five (25) pounds in quantity, naptha, nitro-glycerin or other explosives, phosphorus, petroleum or any of its products of greater inflammability than kerosene oil of the legal standard is prohibited unless a specific permit is attached hereto."

It is also provided that the policy should be void, unless otherwise provided by agreement endorsed thereon or added thereto, ". . . if (any usage or custom of trade or manufacture to the contrary notwithstanding), there be kept, used, or allowed on the above described premises, . . . naptha . . . or other explosives, phosphorus, ior petroleum or any of its products of greater inflammability than kerosene oil . . ."

The policy in question was secured and written by an insurance broker named Berry. Plaintiff contends that Berry was acting as agent of the insurance company, and defendant contends that he was acting as agent of the plaintiff. We shall not set out in detail the testimony with respect to Berry's connection with this transaction, for in our view of the case, as will hereafter appear, it is immaterial as to whom Berry represented.

Defendant contends that the keeping of naptha on

the premises being conceded, and it being further conceded that such was more inflammable than kerosense, the policy was thereby rendered void.

Complaint is also made as to the giving of certain instructions, and the submission to the jury of the question of vexatious refusal to pay.

The evidence shows conclusively that naptha was kept on the premises in question, and used in the manufacture of the paint manufactured and used by the plaintiff company. The testimony also discloses that all naptha, whether designated as deodorous naptha, heavy naptha, terrebentine, or texine, is more inflammable than kerosene. There was substantial testimony tending to show that naptha, in some form, was used in eighty per cent. of the paint manufacturing establishmetns of St. Louis, and was universally used by all concerns manufacturing the character of paint manufactured by the plaintiff company. It is the general rule of construction in policies of this kind that the insurer is chargeable with knowledge of the presence of such articles as are customarily and necessarily used in the business insured; this on the theory that the description of the insured property amounts to a consent to keeping the customary articles used therein. [Archer v. Insurance Co., 43 Mo. 434; Niagara F. Ins. Co. v. DeGraff, 12 Mich. 124: Yoch v. Home Mutual Ins. Co., 111 Cal. 503; Pindar v. Kings County F. Ins. Co., 36 N. Y. 648; McClure v. Mutual F. Ins. Co., 242 Pa. 59; Traders' Ins. Co. v. Dobbins, 114 Tenn. 227; Harper v. N. Y. City Ins. Co., 22 N. Y. 441; Mascott v. First Nat. F. Ins. Co., 69 Vt. 116.]

It will be noted that the policy in this case covers its portion of the contents of a paint manufacturing establishment, and the insurance covers all materials constituting their stock in trade, and "incident or necessary to the business as conducted by them." There being substantial testimony to show hat naptha was absolutely essential in the conduct of plaintiff's business, and all naptha being more inflammable than kerosene, this portion of the policy must be held to govern. If plaintiff

used any naptha, it was more inflammable than kerosene. The face of the policy itself showing the kind and character of business insured, would charge defendant with knowledge that plaintiff was using naptha, and, as heretofore stated, all naptha being of a greater inflammability than kerosene oil of the legal standard, it would make no difference what particular kind of naptha plaintiff was using. The question as to whether or not the broker represented the insurance company so as to charge it with knowledge that plaintiff was using naptha, becomes important only in such cases as Kenefick v. Norwich Union Fire Insurance Society, 205 Mo. 294, 103 S. W. 957, where the assured is keeping on the premises such articles as are not usually kept and used on the premises and in the business described in the policy of insurance. [See King County F. Ins. Co. v. Swigert, 11 Ill. App. 590.] In such cases it would be material who the broker represented, as tending to show whether there was any waiver of the provisions in the policy with respect to the keeping of prohibited articles.

Defendant contends that plaintiff's instructions are in conflict with defendant's instructions, and therefore the judgment should be reversed. Instruction No. 1 given for the plaintiff, after setting out such facts as were necessary to entitle plaintiff to recover, concludes as follows:

". . . and if you further believe that on said date W. R. Berry was the agent of the defendant, as explained and defined in other instructions, and that he had been informed and knew before and at the time he issued the policy that plaintiff was using such grade of naptha or petroleum products in manufacturing paint, then you are instructed that the use of naptha, or such petroleum products did not avoid the policy and your verdict should be for plaintiff."

It is contended that this portion of plaintiff's instruction conflicts with one of defendant's instructions. But if such were true, it would not be reversible error in this case, because, plaintiff, in requesting the above

quoted portion of its instruction No. 1, and by offering proof seeking to establish the fact that Berry represented the insurance company, assumed a greater burden than it was required to assume, and if there was error on account of any conflict, then it was error in favor of defendant, and for which defendant cannot complain.

Plaintiff's main instruction, without the portion set out above, presented all the issues necessary to entitle it to recover. This is not deciding the case upon a different theory than that on which it was tried in the court below, but upon the same theory with this element omitted.

As to the question of vexatious refusal to pay, and the alleged error of the trial court in submitting the question of damages and attorney's fees for such, we think there is sufficient evidence in this record to make this a question for the jury.

J. F. Fry, who was vice-president of plaintiff company, testified that when he took up the matter of adjustment with Mr. Fargo, the adjuster for the defendant, and made demand on him for payment, he (Fargo) stated that he was not ready to settle; that he had not been near the plant and did not intend to go near it; and that "there was nothing doing." The adjuster refused to take up the question of the cause of the fire, or to ascertain the loss and damage, unless plaintiff would sign a non-waiver agreement. We think, when all these facts and circumstances are taken into consideration, that it made a question for the consideration of the jury as to whether or not defendant was liable for attorney's fees. The jury did not allow plaintiff anything for vexatious delay, but did allow $200 attorney's fees. We are not quite able to comprehend how the jury would allow one without the other; yet defendant cannot complain if there was evidence tending to substantiate such finding as to either. [Non-Royalty Shoe Co. v. Insurance Co., 277 Mo. 399, 210 S. W. 37.]

The commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.

REPORTER'S NOTE: *Certiorari* issued in the above cause by the Supreme Court, on hearing, was quashed, July 31, 1923. See 254 S. W. Rep. 194.